IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA SNOWDEN | Criminal No. 21-56 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Karen Gal-Or, Assistant United States Attorney for said District, hereby submits the following sentencing memorandum:

## I. BACKGROUND

### A. Procedural Background

On February 11, 2021, a federal grand jury in the Western District of Pennsylvania returned a nineteen-count Indictment against the defendant, Joshua Snowden. Counts 1 through 3 charged the defendant with Making a False Statement in Purchase of a Firearm, on or about October 1, 2020, October 3, 2020, and November 10, 2020, respectively, in violation of 18 U.S.C. § 922(a)(6). Counts 4 through 19 charged him with Possession of a Firearm as an Unlawful User of a Controlled Substance, on or about the following dates: May 14, 2020 (Count 4); May 19, 2020 (Count 5); May 20, 2020 (Count 6); July 16, 2020 (Count 7); September 25, 2020 (Count 8); October 1, 2020 (Counts 9 through 12); October 3, 2020 (Count 13); November 7, 2020 (Counts 14 through 16); and November 10, 2020 (Counts 17 through 19), in violation of 18 U.S.C. § 922(g)(3).

On February 18, 2021, the defendant made his initial appearance and was arraigned. He pled not guilty to the charges filed against him and was released on a $25,000 unsecured bond with

pretrial supervision, to include curfew with electronic monitoring. On March 22, 2022, the defendant withdrew his previous plea of not guilty and pled guilty to Count 6 of the Indictment.

B. Offense Conduct

The defendant admits that he has been an unlawful user of a controlled substance, marijuana, for many years. In a recorded and *Mirandized* interview with ATF, the defendant admitted that he used marijuana nearly every day from 2017 through November 2020. The defendant also admitted that, during the time he was a regular marijuana user, he purchased and possessed numerous firearms. The defendant told investigators that he has purchased approximately 25 to 30 firearms from different Federal Firearm Licensees ("FLLs"), including Rural King Holdings, LLP located in Monaca, Pennsylvania ("Rural King"), John Brown's Armory, Inc., located in Rochester, Pennsylvania ("John Brown's Armory"), and Duke's Sport Shop, Inc. located in New Castle, Pennsylvania ("Duke's"). The defendant further admitted that he lied on the ATF 4473 Form, Firearms Transaction Record, that he completed on May 20, 2020 when he purchased a Smith & Wesson Rifle, Model: M&P-15, 5.56 Caliber, SN: TM13976 (the firearm identified in Count 6 of the Indictment) from Rural King. Law enforcement asked the defendant to read aloud Question 11e "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any controlled substance?" The defendant acknowledged that he did not answer this question truthfully as he regularly used marijuana in May 2020.

Records obtained by ATF show that the defendant purchased the firearms listed in Counts 4 through 19 of the Indictment between May and November 2020, during the period of time he admitted to being an unlawful marijuana user. As noted during the change of plea hearing, one of

the firearms the defendant purchased and possessed while an unlawful drug user, the firearm identified in Count 14 of the Indictment, was recovered following a shooting in January 2021.

## II. The Presentence Investigation Report and Guideline Calculation

As set forth in the Presentence Investigation Report (hereinafter "PSIR"), the base offense for the offense of conviction is 14 pursuant to U.S.S.G. § 2K2.1(a)(6). As described above and in the PSIR, the offense involved the possession of 16 firearms. Thus, the offense level should be increased by four levels pursuant to U.S.S.G. § 2K2.1(b)(1)(B). With a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), the total offense level is 15. The defendant's criminal history score is one (1) based on his conviction for possession of drug paraphernalia in Beaver County. Notably, and as discussed in further detail below, the offense conduct in that case took place on or about May 26, 2021, after the defendant was charged in the instant offense. With a total offense level of 15 and a criminal history category of I, the guideline imprisonment range is 18 to 24 months.

## III. Application of 18 U.S.C. § 3553(a)

When imposing sentence, the Court shall consider the factors set forth in 18 U.S.C. § 3553(a). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

In this case, a review of the factors set forth in 18 U.S.C. § 3553(a) establishes that a sentence at the low end of the applicable guideline range of 18 to 24 months is appropriate. The government also requests that the Court impose a period of supervised release of three years with certain conditions referenced herein.

A. Nature of the Offense

The government asserts that a period of incarceration of 18 months is warranted in this case in light of the danger associated with possession of firearms by users of controlled substances. As a Schedule I controlled substance, Congress has made the determination that marijuana (1) has a high potential for abuse; (2) has no currently accepted medical use in treatment in the United States; and (3) there is a lack of accepted safety for its use. *See* 21 U.S.C. § 812(b)(1). Thus, under federal law, marijuana cannot be prescribed and, therefore, there are no circumstances under which a regular marijuana user - like the defendant - would not be an "unlawful user" under 18 U.S.C. § 922(g)(3) and a "prohibited person" within the meaning of U.S.S.G. § 2K2.1(a)(6). *See* 21 U.S.C.§ 829 (describing controlled substances that may be prescribed and excluding Schedule I controlled substances); *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 492 n. 5 (2001) ("[S]chedule I drugs cannot be dispensed under a prescription."); *Gonzales v. Raich*, 545 U.S. 1, 5, 24 (2005) ("regulatory scheme is designed . . . to prohibit entirely the possession or use of substances listed in Schedule I, except as part of a strictly controlled research project."); *United States v. Cannon*, 36 F.4th 496 (3d Cir. 2022) ("The Controlled Substances Act lists marijuana as a Schedule I controlled substance, reflecting Congress's express determination that it is illegal 'for any purpose' and that it 'has no acceptable medical uses.'").

Congress also has determined that individuals who possess firearms while they actively abuse or are addicted to controlled substances pose a danger to the community. *See United States v. Yancey*, 621 F.3d 681, 686 (7th Cir. 2010) (citing academic research pertaining to the link between drug abuse or addiction and violent crime); *United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005) ("unlawful users of controlled substances pose a risk to society if permitted to bear arms"). In recognizing the dangerousness of the behavior, Congress reasonably linked government's important interest in keeping firearms away from dangerous people with the prohibition of § 922(g)(3). For these reasons, the offense is serious enough to warrant a sentence of incarceration of 18 months, the low end of the guideline range.

B. The History and Characteristics of the Defendant

The history and characteristics of the defendant also warrant a sentence of incarceration. *See* 18 U.S.C. § 3553 (a)(1). The defendant has a long history of being a regular marijuana user. He admitted to the probation officer that he began using marijuana at age 19. PSIR at ¶ 49. He stated that he initially used marijuana daily and then decreased his use to weekly "a few years later." *Id.* The defendant also has a history of using firearms irresponsibly. As the PSIR notes, on December 11, 2020, the defendant was arrested by Beaver Falls Police Officers after witnesses reported they observed the passenger of a vehicle shoot a firearm in the air from inside the vehicle. *Id.* at ¶ 37. When officers stopped the vehicle, the defendant admitted to firing the firearm. *Id.* After his arrest, the defendant was placed in an Accelerated Rehabilitation Disposition Program for 12 months.

The defendant's conduct post-indictment is also troubling. As the PSIR states, the defendant tested positive for marijuana use on November 3, 2021, and he admitted to the probation office to using marijuana up until December 2021. *Id.* at ¶¶ 49, 51. Also, according to the PSIR,

the defendant failed to report for substance abuse testing on numerous occasions. *Id.* at ¶ 51. Further, as described in the PSIR, the defendant was stopped by a Beaver Falls Police Officer on May 26, 2021 and found to be driving with a suspended driver's license. After the defendant was arrested, his vehicle was searched and the officer recovered a small amount of marijuana. *Id.* at ¶ 34. The defendant ultimately pled guilty to possession of drug paraphernalia and was sentenced to a fine and costs. *Id.* The defendant also has a pending charge for disorderly conduct related to an incident that occurred as recently as May 24, 2022. *Id.* at ¶ 38.

In light of these facts, particularly the defendant's continued marijuana use following his arrest in this matter, a sentence of incarceration at the low end of the guideline range is warranted.

C. Specific and General Deterrence

A sentence of 18 months' imprisonment will also promote both specific and general deterrence. As described above, neither prior non-incarceration sentences nor his arrest and placement on pretrial supervision in this case have deterred the defendant from using marijuana and engaging in other dangerous conduct. The message of specific deterrence plainly needs to be delivered to him through a sentence of incarceration in this case. Equally important, such a sentence will deter others in the community from engaging in similar conduct. Imposition of a non-incarceration sentence could send a message to individuals inclined to regularly use controlled substances while possessing firearms that a violation of 18 U.S.C. § 922(g)(3), or some other firearms offense, is not a serious offense.

D. Additional Conditions of Supervised Release

Given the defendant's history of drug abuse, the government also recommends a period of supervised release of three years with conditions that may assist the defendant with reintegration

into the community, including drug testing and counseling, vocational training, and a condition that he maintain employment during any period of supervision.

## IV. Response to Defendant's Request for a Downward Variance

The defendant has filed a motion for a downward variance in which he argues that "the 4-level § 2K2.1(b) offense level enhancement is not designed to apply to situations such as those presented by the instant case." ECF No. 67 at ¶ 5. The defendant also addressed the issue in his Sentencing Memorandum in which he argues that:

> A person whose only offense is marijuana use is no more of a threat to the public by owning multiple guns than by owning one gun. Whatever risk was posed by Mr. Snowden's diligence or lack thereof in the manner in which he stored his firearms, was not affected as a result of his penchant for marijuana.

ECF No. 68 at p. 4.

The government disagrees and asserts that the four-level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(1)(B) should be applied in this case.[1] As described above, while the defendant pled guilty only to Count 6 of the Indictment, he admitted at the change of plea hearing to possessing 16 firearms at various times between May 2020 and November 2020, when he was a regular marijuana user. For this reason, the four-level adjustment pursuant to U.S.S.G. § 2K2.1(b)(1)(B) is plainly applicable.

Further, the government opposes any request for a downward variance based on the defendant's argument that the Court should not consider the number of firearms at issue in determining the appropriate sentence in this case. The fact that the defendant owned not one but rather *16 firearms* as a prohibited person is important, as it changes the danger his firearm possession poses to the community. That is, each firearm that the defendant purchased and

---

[1] Indeed, the defendant admits in his Sentencing Memorandum that the enhancement is "technically applicable." ECF No. 68 at p. 3.

possessed as an unlawful drug user posed its own independent threat to the safety of the community. In this case, that threat is not theoretical but real, as at least one of the firearms that the defendant purchased and possessed while being an unlawful drug user was recovered following a shooting. Thus, the government respectfully requests that the Court consider the number of firearms at issue in this case in calculating the sentencing guidelines and deny the defendant's request for a downward variance.

## V. Conclusion

For the reasons stated above, government respectfully requests that a sentence of 18 months' imprisonment, following by a three-year term of supervised release, be imposed and that the defendant's request for a downward variance be denied.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

/s/ Karen Gal-Or
KAREN GAL-OR
Assistant U.S. Attorney